[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10559
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20341-MGC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GILBERTO OJEDA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 9, 2019)

Before MARTIN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Gilberto Ojeda appeals his conviction and sentence for conspiracy to launder the proceeds of the manufacture and sale of narcotics, in violation of 18 U.S.C. § 1956(h).  He argues that the district court abused its discretion by denying his motion to dismiss his indictment based on a violation of his Sixth Amendment right to a speedy trial.  He additionally argues that the district court clearly erred in finding that he knew the laundered money was derived from drug trafficking activity, participated in laundering funds totaling more than $250,000, and did not play a minor role in the offense.

## I.

We review the denial of a motion to dismiss the indictment for an abuse of discretion.  *United States v. York*, 428 F.3d 1325, 1331 n.8 (11th Cir. 2005).  Whether the government deprived a defendant of his constitutional right to a speedy trial is a mixed question of law and fact.  *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010).  We review the district court's legal conclusions *de novo* and its factual findings for clear error.  *Id.*

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."  U.S. Const. amend. VI.  "Because of the unique policies underlying this right, a court must set aside any judgment of conviction, vacate any sentence imposed, and dismiss the

2

indictment if it finds a violation of the defendant's right to a speedy trial."
*Villarreal*, 613 F.3d at 1349.

A defendant's voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings against him. *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014). A defendant who wishes to plead guilty may preserve his appeal rights by entering a conditional plea. Fed. R. Crim. P. 11(a)(2). Such a plea must be made "[w]ith the consent of the court and the government," and must "reserv[e] in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Fed. R. Crim. P. 11(a)(2); *see also United States Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997). We have specifically stated that a Sixth Amendment speedy trial claim is waived by a guilty plea. *See Pierre*, 120 F.3d at 1155 (noting that the right to a speedy trial has been repeatedly been held to be waived by a guilty plea).

Here, Ojeda waived his right to appeal the order denying his motion to dismiss the indictment based on a violation of his Sixth Amendment right to a speedy trial by entering an unconditional guilty plea.

## II.

We review a district court's findings of fact for clear error and its application of the Sentencing Guidelines to the facts *de novo*. *United States v. Demarest*, 570 F.3d 1232, 1239 (11th Cir. 2009). We will remand for clear error only if we are

"left with a definite and firm conviction that a mistake has been committed." *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation marks omitted). A district court's choice between two permissible views of the evidence is not clear error. *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (*en banc*).

Under U.S.S.G. § 2S1.1(b)(1), the district court should apply a six-level enhancement if § 2S1.1(a)(2) applies and the defendant knew or believed that the laundered funds were the proceeds of a controlled substance. *See* U.S.S.G. § 2S1.1(b)(1)(A), (B)(i). When applying a sentencing enhancement, the government may use circumstantial evidence to prove the mental state of the defendant. *United States v. Frazier*, 605 F.3d 1271, 1282 (11th Cir. 2010).

Here, the district court did not clearly err when it applied a six-level enhancement for laundering drug proceeds because it had sufficient circumstantial evidence to support a finding that Ojeda knew the laundered funds were the proceeds of drug-trafficking activity.

### III.

We review the district court's determination of the facts concerning the amount of money involved in a money laundering scheme only for clear error. *United States v. Martin*, 320 F.3d 1223, 1225 (11th Cir. 2003).

For offenses involving money laundering, the sentencing guidelines provide an increase to a defendant's offense level depending on the value of the laundered funds. U.S.S.G. § 2B1.1(b)(1). Section 2B1.1(I) provides for a 12-level enhancement where the loss from an offense is between $250,000 and $550,000. U.S.S.G. § 2B1.1(b)(1)(E), (G).

Unless otherwise specified, relevant conduct of the defendant shall be used to determine sentencing. U.S.S.G. § 1B1.3(a). Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). When the government seeks to apply an offense enhancement under the Sentencing Guidelines over a defendant's factual objection, the government has the burden of providing reliable and specific evidence in support of the enhancement. *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013). In calculating the value of laundered funds, "the district court is required to consider the total amount of funds that it believed was involved in the course of criminal conduct." *Martin*, 320 F.3d at 1226 (quotation marks omitted).

Here, the district court did not clearly err when it determined that the preponderance of the evidence showed that Ojeda had personally laundered a sum over $250,000 by delivering cash to his co-conspirators on three occasions. Co-conspirator Reyes admitted in his factual proffer that he stated to IRS agents that

5

Ojeda delivered $99,848 on January 29, 2013, and $99,610 on January 22, 2013.

The district court could have inferred Ojeda's involvement in the August 2012

delivery from circumstantial evidence as well as from Reyes' factual proffer.

Involvement in the three deliveries would reach the $250,000 threshold.

IV.

We review a district court's denial of a role reduction for clear error. *United*

*States v. Bernal-Benitez*, 594 F.3d 1303, 1320 (11th Cir. 2010). The defendant

bears the burden of establishing his minor role in the offense by a preponderance

of the evidence. *Id.* The clear-error standard gives great deference to the court for

this factual inquiry, as the court "is in the best position to weigh and assess both

the defendant's role in [his] relevant conduct and the relative degrees of culpability

of the other participants in that conduct." *De Varon*, 175 F.3d at 938.

The Sentencing Guidelines provide for a two-level reduction of the base

offense level if a defendant was a minor participant in the criminal activity.

U.S.S.G. § 3B1.2(b). A minor participant is one "who is less culpable than most

other participants, but whose role could not be described as minimal." *Id.*, cmt.

(n.5). The determination of whether to apply a mitigating-role adjustment "is

heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, cmt.

(n.3(C)). The application notes also explain that a defendant being paid to perform

certain tasks should be considered for a role adjustment under this section. *Id.*, cmt. (n.3(C)).

The district court must compare the defendant's role in the offense with the relevant conduct for which he has been held accountable with respect to calculating his base offense level. *Bernal-Benitez*, 594 F.3d at 1320. A defendant must prove that he played a lesser role in the relevant conduct attributed to him, and will fail to carry his burden if either his actual conduct is more serious than his base offense level suggests or the relevant conduct attributed to him is identical to his actual conduct. *De Varon*, 175 F.3d at 941–43 (noting, for example, that unless there are additional facts as to the defendant's status and assigned tasks within the scheme, a drug courier's own act of importation alone will not qualify him for a minor-role reduction). However, "the fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." *United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006) (brackets and quotation marks omitted).

The Sentencing Guidelines provide the following factors to determine whether a defendant's conduct warrants a minor role reduction:

> (i) the degree to which the defendant understood the scope and structure
> of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and]

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, cmt. (n.3(c)); *see also United States v. Cruickshank*, 837 F.3d 1182, 1194 (11th Cir. 2016).

Here, the district court did not clearly err when it denied a minor role reduction because circumstantial evidence supported the conclusion that Ojeda did not play a minor role in the offense and because the conduct for which he was charged was not greater than his actual conduct. Although Ojeda contends that he was merely a one-time courier, he failed to carry his burden to prove that he played a lesser role in his offense than the conduct attributed to him in calculating his base offense level. Further, the confidential informant's notes provided circumstantial evidence supporting that Ojeda understood the scope of the activity of the conspiracy by communicating with his co-conspirators in Colombia. The record also supported a finding that Ojeda participated equally in the planning or organizing of the laundering when he directed Ceballos and Reyes to receive

8

funds.  Because the district court could have inferred Ojeda had a larger role from this evidence, it did not clearly err when it denied the reduction.

**AFFIRMED.**